# COURSON v. O'CONNOR.

---

PATENTS; INTERFERENCE; CONCEPTION; DISCLOSURE; REDUCTION TO PRACTICE; DILIGENCE.

1. In an interference involving a friction draft rigging or gear for railway cars, it was held on a review of the evidence, and affirming a decision of the Commissioner of Patents, that none of eight different tests of devices claimed by the junior party to involve the issues of the interference was sufficient to constitute a reduction to practice.

2. The junior party to an interference, having to rely upon his filing date for a constructive reduction to practice, although the first to conceive, must discharge the burden of establishing that he was exercising diligence at and subsequent to the time the senior party conceived the invention.

3. Where the junior party to an interference involving a friction draft rigging or gear for railway cars, who, though the first to conceive, spent ten years between the date of his conception and the filing of his application in testing his device, without actually reducing it to practice, although, as foreman of railroad shops, he had every facility for doing so, and delayed about three months after making his last test before preparing and making oath to his application, and then delayed about a month in filing his application; while the senior party conceived the invention about a month before such final test by the junior party, immediately set about reducing his invention to practice, and filed his application before the junior party filed his,— it was *held* that the junior party was lacking in diligence, and that the senior party was entitled to an award of priority.

4. There is no arbitrary rule or standard by which diligence may be measured in an interference proceeding, but each case must be considered and decided in the light of the circumstances of that case. (Following *Woods* v. *Poor*, 29 App. D. C. 397.)

No. 747. Patent Appeals. Submitted March 12, 1912. Decided April 1, 1912.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case. *Affirmed.*

The facts are stated in the opinion.

*Mr. Charles M. Clarke* and *Mr. W. B. Corwin* for the appellant.

*Messrs. Munday, Evarts, Adcock, & Clarke* and *Mr. H. N. Low* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference proceeding awarding priority of invention to appellee, Martin A. O'Connor. The issue is set forth in seven counts, of which the following are sufficient for the purposes of this appeal:

"1. In a friction draft gear, the combination with the cas-

ing and the relatively movable draw bar, of friction blocks engaging the casing, a buffing block engaging the draw bar, and differential angle wedge blocks interposed between the friction blocks and the buffing block, substantially as set forth."

"3. In a friction draft gear, the combination with the casing, of friction blocks, a buffing block, and interposed wedge blocks having outer faces engaging the inner faces of the friction blocks and inner faces of steeper inclination engaging the outer faces of the buffing block, substantially as set forth."

"5. In a friction draft rigging, the combination with the draw bar, spring and coacting friction members, of a compound wedge having a blunt wedge member and a collapsible acute wedge member, the latter acting against the friction members to produce high cushioning capacity, and the former against the draw bar to insure a perfect, certain, and reliable release action, substantially as specified."

"7. In a friction draft rigging, the combination with a draw bar, spring, and followers, of a longitudinally movable friction shell, a plurality of segmental friction shoes within said shell, said spring reacting at one end against the shoes and at the other end against the shell to separate them, said friction shoes having acute wedge faces, a blunt wedge member and a plurality of acute wedge members engaging said friction shoes and having blunt wedge faces engaging the wedge faces of said blunt wedge, substantially as specified."

The invention is described in the opinion of the Examiners in Chief as follows: "The subject-matter of the above-entitled interference is a friction draft gear for railway cars. The object of devices of this character is to supplement the resistive action of the spring or springs ordinarily employed in draft gears to resist buffing and pulling strains. This object is effected by developing friction in proportion to the strains to which the device is subjected. In accordance with the constructions of the parties involved in this proceeding, such friction is developed through the instrumentality of a cylindrical casing against the inner walls of which shoes are forced into and out of frictional contact by means of a plurality of wedges. Of

these wedges the first or primary wedge has a plurality of blunt faces which co-operate with corresponding faces on as many separate or secondary wedges, each of which latter has an additional face or wedge surface of relatively lesser inclination to the longitudinal axis of the gear. These lesser inclined wedge surfaces of the secondary wedges engage with corresponding surfaces or faces on the shoes, which latter engage the inner surface of the cylinder. With the parts constructed as above set forth, when placed under strain, a relative movement occurs along the line of contact between the secondary wedges and their shoes because of the lesser inclination of the engaging surfaces at this point, than obtains along the lines of contact between the blunt faces of the secondary wedge and the primary wedge. Because of the fact that there is no relative movement along the lines of the engaging surfaces between the primary wedge and the secondary wedges when these elements are brought into contact under the buffing or pulling actions to which the device is subjected, it follows that when such actions or strains are withdrawn, the primary and secondary wedges at once separate without binding, and in consequence, under the action of the spring in returning the parts to normal position, the secondary wedges are left free to follow the primary wedge, and readily release the friction shoes from the abnormal pressures under which they have been forced into contact with the surrounding cylinder walls."

Appellee, O'Connor, filed his application on February 4, 1909. Appellant, John F. Courson, filed his first application, upon which all of the counts of the interference can be read, on February 8, 1909. The tribunals of the Patent Office fix the earliest date of conception by O'Connor as November, 1908; while Courson, it is agreed, established a date of conception as early as December 24, 1898. O'Connor can claim no date for reduction to practice prior to the filing of his application. Courson, therefore, being the first to conceive, can prevail on either of two grounds,—that he reduced to practice prior to O'Connor's date of reduction, or that he was diligent from the

time O'Connor entered the field down to the date of filing his application.

It appears that Courson constructed and tested a number of devices embodying the counts of the issue, during the ten years between the date of conception awarded him and his filing date. In his testimony he refers to eight different tests of devices made involving the issues of this interference. We are confronted by unanimous decisions to the effect that none of these tests was sufficient to constitute a reduction to practice. On this point we have examined the evidence and the exhaustive review thereof in the opinions of the various tribunals of the Patent Office, and we are agreed that the tests made are insufficient to establish reduction to practice.

A more difficult proposition is presented on the subject of diligence. Courson, being the junior party, and having to rely upon his filing date for a constructive reduction to practice, though the first to conceive, must discharge the burden of establishing that he was exercising diligence at and subsequent to the time O'Connor conceived the invention.

It appears that the last test made by Courson was on October 17, 1908, which it may be conceded shows diligence on his part just prior to the entry of O'Connor into the field, but his activity seems to have ceased at that point. Nothing further was done until the 19th of January following, when the oath to his application was made. Almost a month then elapsed before the application was filed in the Patent Office. In the meantime, O'Connor had conceived the invention in November, and immediately set about reducing it to practice, and with exceeding promptness filed his application on February 4th following. In holding Courson guilty of lack of diligence, we must take into consideration his action between the date of conception and constructive reduction to practice by the filing of his application. He had spent over ten years in accomplishing what O'Connor did in less than three months. The same indifference is displayed in delaying the filing of his application for almost one month after it was prepared.

Courson had every facility at hand to enable him to speedily

reduce his invention to practice, or to file his application at a much earlier date. He was general foreman of the Pennsylvania Railroad shops at Pitcairn, Pennsylvania. His invention, as shown in his application, was a complete conception in his mind in 1898. He had full authority to construct and test gears, and on several occasions made devices embodying the invention. These were tested and then discarded and scrapped. During this period he took out a number of patents on draft gears, which implies that he attached little importance to the one in issue.

While the period during which Courson is chargeable with negligence is short, his conduct during that time must be considered in connection with all of the other circumstances in the case. As was said by Mr. Justice Robb in *Woods* v. *Poor*, 29 App. D. C. 397: "There is no arbitrary rule or standard by which diligence may be measured. The sole object of the law being to mete out the fullest measure of justice, each case must be considered and decided in the light of the circumstances of that case. The nature of the invention, the situation of the inventor, the length of time intervening between conception and reduction to practice, the character and reasonableness of the inventor's testimony and that of his witnesses,—are all important factors in determining the question of diligence."

We find no reversible error. The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings as by law required.        *Affirmed.*